IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNETT MOORE, | No. C 06-03425 SBA |
| Plaintiff, | |
| v. | **ORDER**<br>[Docket No. 55] |
| AVON PRODUCTS, INC., a New York Corporation; and Does I through X, | |
| Defendant. | |

Currently before the Court is defendant Avon Products, Inc.s' Motion for Summary Judgment [Docket No. 55]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS the motion for the reasons set forth below.

## **BACKGROUND**

Plaintiff Arnett Moore, an African-American male, is a former division manager of defendant Avon Products, Inc. In this case, Moore sues Avon for discrimination based on disability, medical condition, sex, age, race, and religion.

### **I.    Avon Hires Moore as a Division Manager**

Avon is a nationwide direct seller of cosmetics, clothing, toys, perfume, jewelry, books, videos, and home décor items. Avon's products are sold to consumers primarily through independent sales representatives. Moore Dep. at 39:14-17. Groups of sales representatives throughout the United States are organized into what Avon calls "districts" that are led by a district manager. *Id.* at 39:11-17; Hamilton-Oar Dep. at 39:15-40:8. Districts, in turn, are organized into divisions based primarily on

geography. Moore Dep. at 254:25-255:7. Divisions are run by division managers who report directly to a regional director. Hamilton-Oar Dep. at 286:13-23.

In April 1998, Avon hired Moore, then a 51-year-old African-American man, into a management training position. Moore Dep. at 18:6-22:6; 34:9-13; 67:18-68:8; 204:24-25. The purpose of the management training position was to train Moore to become a division manager. In 1999, Moore was promoted to division manager of the "Golden Lights"[1] division. *Id.* at 37:1-25; 38:12-15. As a division manager at Avon, Moore's job duties entailed: motivating sales; training, hiring, and disciplining district managers; measuring performance of district managers; and ensuring that district managers were progressing toward the sales goals established by the Company. *Id.* at 41:6-19; 44:15-46:6.

One of the job duties Moore had as a division manager was to ensure that his division consistently achieved the key sales indicators established by Avon management. *Id.* at 41:6-19; 44:15-46:6. The key sales indicators, which Avon refers to as "Key Performance Indicators" or "KPIs" included: total sales (measured as a dollar amount), number of orders by sales representative, number of sales representatives added to staff, and the total number of sales representatives in the division. *Id.* at 44:15-45:19; 47:7-48:4; 50:14-17; 60:7-62:8. Thus, it was Moore's job as a division manager to ensure that both his division as a whole, and each of the district managers he supervised met the KPIs. *Id.* at 49:23-50:9.

**II.     Moore is Transferred to the Crystal Star Division**

Moore was the division manager of the Golden Lights division for approximately three years. Then, in February 2003, Avon transferred Moore to the Crystal Star Division. Moore Dep. at 85:18-86:14. In 2003, Crystal Star was part of the Galaxy Region (formerly known as the "West Region"). *Id.* Shortly after this transfer, Moore began reporting to Linda Hamilton-Oar, the Regional Sales Director. Moore Dep. at 92:19-93:10; Hamilton-Oar Dep. at 9:5-10:3; 10:9-15. Linda Hamilton-Oar is a Caucasian female who is two years older than Moore. Moore Dep. at 302:12-13; Hamilton-Oar Dep. at 47:19-20. Garth Warner, an African-American male over 40, was the Regional Vice President of

---

[1]Avon's sales divisions, which appear to be regionally demarcated, are given idiosyncratic names such as "Golden Lights" and "Crystal Star."

Galaxy at the time Moore transferred to Crystal Star. Moore Dep. at 93:11-94:11; 302:10-11. Throughout the remainder of Moore's employment at Avon, he reported to Hamilton-Oar, and Hamilton-Oar reported to Warner. *Id.* at 93:11-94:11. Moore does not contend that his transfer to Crystal Star was discriminatory or unfair, or that any actions taken by Hamilton-Oar or Warner prior to the moment his employment was terminated were discriminatory or unfair. *See, e.g.*, Moore Dep. at 36:9-25; 84:5-19; 91:11-92:7; 100:7-10; 309:23-310:16.

Hamilton-Oar gave Moore two performance evaluations after he started working in Crystal Star. The first evaluation covered Moore's performance in 2003. The second evaluation covered Moore's performance in 2004. Moore testified that both performance reviews and the comments made by Hamilton-Oar in the performance reviews were fair. *Id.* at 72:1-73:2; 74:6-75:7; 79:2-10; 79:11-80:1; 81:7-83:22. During his deposition, Moore could not identify a single action taken by Hamilton-Oar, Warner, or Avon before delivering the news of his discharge that he believed was unfair or discriminatory based on his purported disability, sex, age, race, or religion, and he never once during his employment complained of being treated differently by Avon because of his disability, sex, age, race, or religion. *See, e.g.*, Moore Dep. at 36:9-25; 84:5-19; 91:11-92:7; 100:7-10; 223:11-14; 309:23-310:16; 310:24-311:17.

### III.   Avon Eliminates the Polaris Division in Late 2005

Periodically, Avon evaluates its geographic sales territories. As part of this process, Avon may eliminate divisions or districts and redistribute the underlying sales personnel to surrounding areas to maximize profitability. Hamilton-Oar Dep. at 173:1-14. When Avon eliminates a division and redistributes its underlying districts, the process is called "redivisioning." *Id.* at 21:5-23:18; 27:9-29:1.

In the fall of 2005, Avon decided to redivision a division named "Polaris." *Id.* at 171:4-10; 172:11-173:14. Avon contends that the decision to eliminate Polaris was solely economic. Based on the size, geography, and overall sales revenue, Avon determined it would increase profit to eliminate the Polaris division. *Id.* at 186:21-191:13. Avon decided to reassign Polaris' sales districts to the surrounding divisions based primarily on geography. *Id.* at 176:7-16; 178:21-180:16; 180:21-181:9; Ex. 37. The Avon employees involved in the decision to redivision Polaris included Warner, (Baptist, African-American, 41), Hamilton-Oar (Mormon, Caucasian, 60), and Karen Caswell, Avon's Human

3

1 Resources Manager (Catholic, Caucasian, 46). Moore Dep. at 288:20-289:3; 302:10-17; Hamilton-Oar
2 Dep. at 47:19-20; 171:7-15; Warner Dep. at 42:12-13; Caswell Dep.at 8:8-246; Caswell Decl. at ¶¶ 2,
3 3; Warner Decl. at ¶ 2.

4       The Polaris redivisioning was to be effective January 2006. In January 2006, Polaris' sales
5 districts also were scheduled to be reassigned to the three surrounding divisions. Moore's Crystal Star
6 division was scheduled to receive four districts. The Golden Lights division was scheduled to gain three
7 districts. Paradise was scheduled to receive six districts. Hamilton-Oar Dep. at 193:19-194:2;
8 257:24-258:14, Ex. 43. At the time of the Polaris redivisioning, Kimbra Shaw (Non-denominational
9 Christian, Caucasian/Hispanic, 39) was the division manager of Polaris; Rosario Garcia (Catholic,
10 Hispanic, 33) was the division manager of Paradise; Susan Matthews (Baptist, Caucasian, 54) was the
11 division manager of Golden Lights; and Moore (Baptist, African-American, 59) was the division
12 manager of Crystal Star. Hamilton-Oar Dep. at 191:15-24; 194:3-5; Moore Dep. at 175:19-176:16;
13 275:20-22; 302:18-20; First Amended Complaint ("FAC") at ¶ 5; Matthews Dep. at 9:10-11; 63:4-6;
14 Garcia Dep.at 124:2-6; 127:3-4; 129:9-10; Shaw Decl." at ¶¶ 2, 3.

15       Moore does not contend that Avon's decisions to eliminate Polaris and reassign its districts were
16 based on his age, race, religion, sex, or disability. To the contrary, Moore testified that he had no reason
17 to believe that Avon's decision to eliminate Polaris was based on anything other than the economic
18 performance of the division. Moore Dep. at 170:5-9.

19 **IV.   After Eliminating Polaris, Avon Assesses the Performance of the Division**
20      **Managers Impacted by the Reorganization**

21       After Avon eliminated Polaris, its division manager, Shaw, was without a division to manage.
22 Avon, however, did not automatically terminate Shaw. Hamilton-Oar Dep. at 191:15-21; 194:3-5.
23 Instead, the Avon performed a "cluster analysis" in which it evaluated the relative performance of the
24 four division managers impacted by the Polaris redivisioning (i.e., the four division managers in the
25 "cluster"). In this regard, Avon ranked each division manager—Shaw, Moore, Garcia, and
26 Matthews—based on their KPI performance for the year 2005. The lowest-ranking division manager
27 was Moore. *Id.* at 248:19-258:10, Exs. 42, 43. Based on this analysis, Hamilton-Oar, Warner, and
28 Caswell recommended Moore's discharge from Avon. *Id.* at 264:6-21; 266:12-25; 270:20-271:18.

Moore's termination was approved by mid-December 2005 by Angelo Rossi (Catholic, Caucasian, 55), Warner's superior, and Sunny Franklin (Seventh-day Adventist, African-American, 53), Avon's Director of Human Resources out of New York. Hamilton-Oar Dep. at 271:12-272:7; Warner Dep. at 19:1-13; 154:23-155:20; Caswell Dep. at 11:15- 12:9; 212:25-214:25; Moore Dep. at 302:14-15; Rossi Decl. at ¶¶ 2-4; Franklin Decl. at ¶¶ 2-4. Moore does not dispute the accuracy of the KPI data used to evaluate his performance relative to Garcia, Shaw, and Matthews. Indeed, Moore received the same reports containing the KPI data Avon considered when it ranked Moore against the other managers. Moore Dep. at 63:17-21; 66:8-11; 104:13-22; 152:6-19; 156:20-158:10, Exs. 22, 25. Moore admitted that when his KPI numbers were compared to those for Garcia, Shaw, and Matthews, he ranked last. *Id.* at 156:20-158:10, Ex. 25.

**V.     Avon Terminates Moore's Employment**

On January 3, 2006, Avon discharged Moore, explaining that the Company made the decision to terminate his employment based on his poor performance. Moore Dep. at 181:14-182:18. Thereafter, Avon transferred Shaw to the Crystal Star Division. *Id.* at 179:3-4; 187:12-16. At the time Avon transferred Shaw to Crystal Star, she had been employed as a district manager from 1999 to 2004 and division manager since 2004. Shaw Decl. at ¶¶ 4, 6-7. Following her transfer to Crystal Star, Shaw improved the division's performance, ending 2006 with net sales exceeding her KPI goal. Shaw Decl. at ¶ 9, Ex. A.

**VI.    Moore Files Administrative Charges for Race and Religious Discrimination**

After his January 3, 2006, discharge, Moore filed his initial charge of discrimination with the California Department of Fair Employment and Housing ("DFEH") on February 24, 2006. FAC at ¶ 8. Thereafter, Moore filed his civil complaint. Moore's February 2006 charge and his complaint alleged that Avon terminated Moore because of his sex, age, and disability/perceived disability only. *See* FAC at ¶ 8, Ex. 1.

More than one year after his termination, and more than a year after filing his initial charge, Moore filed an amended and additional charge of discrimination with the DFEH on March 22, 2007. FAC at ¶¶ 9-10, Exs. 3, 5. In these March 2007 charges, Moore asserted for the first time the allegation

1 that his discharge was based on his race and religion. Moore subsequently filed his First Amended
2 Complaint in this action and added claims for discrimination based on race and religion.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on the pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Federal Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

### II. Fair Employment and Housing Act

Because California courts use related federal precedent regarding similar federal laws when applying state discrimination laws, a plaintiff alleging discrimination under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900 et seq., must survive the burden shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792(1973). *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 355-56 (2000); *Meraz v. Jo-Ann Stores, Inc.*, 2004 WL 882458, *11 (C.D. Cal. 2004). The test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. *Guz*, 24 Cal.4th at

6

354.

In the first step of the *McDonnell Douglas* test, the employee plaintiff must establish a prima facie case of discrimination. *Winarto v. Toshiba Am. Elect. Co.*, 274 F.3d 1276, 1284 (9th Cir.2001); *Guz*, 24 Cal.4th at 354. The specific elements of a prima facie case may vary depending on the particular facts. Generally, the plaintiff must provide evidence that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. *Guz*, 24 Cal.4th at 355. If the employee does so, then in the second step, burden of production shifts to the defendant to articulate a legitimate non-discriminatory explanation for the adverse employment action. *Guz*, 24 Cal.4th at 355-56. Finally, in the third step, if the employer rebuts the inference of discrimination, the burden of production shifts back to the plaintiff to show that the defendant's explanation is merely a pretext for impermissible discrimination. *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658-659 (9th Cir. 2002).

A plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer. *Noyes v. Kelly Services*, 488 F.3d 1163, 1170 (9th Cir. 2007)."Direct evidence" is evidence "which, if believed, proves the fact of discriminatory animus without inference or presumption." *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1095 (9th Cir. 2005); *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir.1998). Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer. *See, e.g., Godwin*, 150 F.3d at 1221 (supervisor stated he "did not want to deal with [a] female"); *Cordova v. State Farm Ins.*, 124 F.3d 1145, 1149 (9th Cir.1997). Where the evidence of pretext is circumstantial, rather than direct, the plaintiff must present "specific" and "substantial" facts showing that there is a genuine issue for trial. *Noyes*, 488 at 1170.

While the burden of production may shift, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Guz*, 24 Cal.4th at 356.

7

## ANALYSIS

**I.    AVON'S PRACTICES WITH REGARD TO TERMINATION**

As an initial matter, Moore argues that the process by which Avon came to the conclusion that Moore should be terminated, i.e. the "cluster analysis" in which it compared the performance of the four division managers, was not Avon's normal practice with respect to terminations, and was in fact an ad-hoc procedure contrived by Hamilton-Oar to give the appearance of a legitimate pretext for wrongfully terminating Moore.

This claim is unsupported by the facts. All of the witness with knowledge of Avon's redivisioning procedures testified that, when making employment decisions following a redivisioning, Avon evaluates the relative performance of Division Managers impacted by the redivisioning (i.e., those in the "cluster") based on one-year's worth of objective sales data. Each witness testified that, if a termination decision must be made, Avon does not automatically terminate the manager of the division being eliminated, and instead it discharges the lowest-performing manager impacted by the redivisioning. *See* Hamilton-Oar Dep. at 26:2-28:1; 59:24-60:16; 191:15-24; Warner Dep. at 71:2-15; Caswell Dep. at 169:23-170:2.

Moore primarily relies on certain documents that he argues reflect the fact that Avon usually uses a two or five year performance window to evaluate employee performance, whereas in Moore's case it only looked at one year of performance. Opp'n at 12. However, the documents Moore cites in his opposition reflecting multi-year performance data were neither created nor used in a redivisioning context, and were not relied upon by Avon in making the decision to discharge Moore or any other Division Manager. For example, Moore cites Exhibits 12 and 41, which include sales data over a five-year period for several Division Managers, including Moore. However, these documents were unrelated to the Polaris redivisioning and instead reflect bonus performance data, and were never shared with anyone involved in making the decision to discharge Moore. Caswell Dep. at 188:22-189:7; 190:15-21; 191:18-194:16. Moore also cites Exhibits 39 and 40, which include sales data from numerous Division Managers for 2004 and 2005. These documents were prepared for the purpose of monitoring employee performance generally, and not to evaluate any employee for discharge. Hamilton-Oar Dep. at 252:13-253:11. Moore additionally points to Exhibit 42, which shows a two-year

8

comparison of employees, but Moore fails to lay any foundation for this document or otherwise explain its purpose. These documents fail to raise a genuine issue of material fact as to whether Avon's procedure in determining to eliminate Moore was in any way contrived or irregular.

Additionally, Moore attempts to raise the specter of a material issue of fact by claiming that Hamilton-Oar fabricated a "paper trail" documenting Moore's poor performance. Specifically, Moore claims in his opposition that two meetings supposedly held on April 12 and August 12, 2005, during which Hamilton-Oar claims she took notes documenting her conversations with Moore about his performance, never took place, and therefore the notes of those meetings are fabricated. As evidence of this, Moore's opposition cites to his declaration. However, Moore's declaration *confirms* that the April 12 meeting took place (Moore Decl. ¶ 6 ("On April 12, 2005, I had a phone conference with Linda Hamilton-Oar")), and – in what could be an attempt to intentionally mislead the Court – states only that he did not speak with Hamilton-Oar "on August 11, *or on 2005* [sic][2], nor . . . anytime *after* August 12, 2005." Moore Decl., ¶ 7 (emphasis added). Thus, by its own terms, Moore's declaration confirms that the April 12 meeting took place, and does not deny that the August 12 meeting took place.

In short, Moore has failed to offer evidence rebutting Avon's employees' testimony that Avon followed its standard practices in deciding to terminate Moore. Accordingly, the Court must examine whether Moore has offered any specific evidence of discrimination that shows that Avon's explanation for terminating him is pretextual.

## II. FIRST CAUSE OF ACTION FOR DISABILITY DISCRIMINATION

Moore's first cause of action alleges that Avon discriminated against him on the basis of a disability, perceived disability, and/or medical condition in violation of FEHA. Moore's opposition brief states that he has abandoned his claim for disability discrimination, implicitly conceding that this claim

---

[2] As can be seen, Moore's declaration could be interpreted as having erroneously omitted the words "August 12" before the word "2005." However, given that Moore is attempting to use this evidence to demonstrate that no meeting took place on August 12, 2005, this omission raises the concern that the words were intentionally omitted to avoid potential charges of perjury.

9

1 for relief lacks merit.[3] Opp'n at 1. Avon is therefore entitled to judgment dismissing this claim with
2 prejudice.

## III. SECOND CAUSE OF ACTION FOR GENDER DISCRIMINATION

Moore's second cause of action claims that Avon discriminated against him because he is male. As described above, Avon has articulated a legitimate non-discriminatory explanation for terminating Moore, namely, that his performance was the worst of the four division managers who were being considered for termination. *See* Hamilton-Oar Dep. at 264-271. Therefore, the burden shifts to Moore to show that Avon's explanation is merely pretextual.

Moore contends that he has "direct evidence" of sex discrimination in the form of various statements made by Hamilton-Oar to persons other than Moore, years before Moore's termination, that supposedly demonstrate gender bias. Hamilton-Oar allegedly told two employees that she thought "women make better district and division managers," that manager positions were "jobs for women," and that Hamilton wanted "women-run divisions." Opp'n at 4-5, 19.

However, these comments, which were allegedly made in 2003, were not made in reference to Moore and did not relate to Moore's discharge. Powers Dep. at 51:15-19; Paey Dep. at 38:12-23. Moreover, Moore presents absolutely no information as to what context these comments were made in. Allegedly discriminatory comments that are ambiguous, unrelated to an employment decision, or separated in time from a contested employment decision do not support an inference of discriminatory intent. *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993). Isolated or "stray" remarks are insufficient to establish discrimination without other indicia of discriminatory intent. *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir.1990). Indeed, "remarks ... when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements are made by the decision-maker in issue." *Cavanaugh v. Unisource Worldwide, Inc.*, 2007 WL 915223, *9 (E.D.Cal.,2007) (quoting *Smith v. Firestone Tire & Rubber Co.*, 875 F.2d 1325, 1330

---

[3] That this claim was in fact meritless is demonstrated by the fact that Moore's sole piece of evidence in support of this claim was Moore's unsupported speculation that his purported disabilities "must have been" the reason for his termination. *See* Mot. at 16. Of course, this argument is contradicted by Moore's other arguments that the reasons for his termination were actually his sex, age, race, and religion.

10

(7th Cir.1989).

In any case, such comments, made by one cosmetics sales manager to another, do not demonstrate any particular animus towards men; Avon sells cosmetics, and the observation that a woman might be better suited than a man to sell cosmetics (as division managers were ultimately responsible for the sales within their division) does not constitute evidence of gender bias. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) ("Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision"). Moreover, Hamilton-Oar tempered her supposedly offensive comments by stating she believed there was "room for a few good men." *See* Powers Decl. ¶4 (Beard Decl. Ex. 16). These milquetoasty statements simply do not constitute any evidence, circumstantial or direct, that Avon's proffered reasons for firing Moore are pretextual. *Noyes*, 488 at 1170. (where evidence of pretext is circumstantial the plaintiff must present "specific" and "substantial" facts showing that there is a genuine issue for trial). Summary judgment is therefore granted with respect to Moore's claim for sex discrimination.

## IV.    THIRD CAUSE OF ACTION FOR AGE DISCRIMINATION

Similar to his claims for sex discrimination, Moore's age discrimination claims are based on allegedly ageist comments, unrelated to Moore, made by Hamilton-Oar, *who is two years older than Moore.* Moore has a difficult burden to meet here, because Hamilton-Oar, who Moore claims was the "key" decision-maker concerning his discharge, is older than Moore. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (where a decision-maker is older than the plaintiff, plaintiff has a "difficult burden" in showing age as a motivating factor in the employment decision).

In support of his age claim, Moore asserts that Hamilton referred to certain sales representatives (who directly sell products to customers, as opposed to division managers, such as Moore, who manage district managers, who in turn manage sales representatives) at a luncheon as having "one foot in the grave," commented that one representative's gray hair was an "eye sore," and stated that Avon needed to recruit "fresh blood." Opp. at 5. Assuming Hamilton-Oar made these statements, it is difficult to see how they can be interpreted as evidence that Moore, a division manager, was fired because of his age. Indeed, both Beth Powers and Lea Miller, two of Moore's sources for the age-based comments, testified that they did not interpret Hamilton's alleged comments to mean that Hamilton-Oar wanted Avon to

11

1  discharge any sales representatives. Powers Dep. at 33:2-6; Miller Dep. 34:23-36:2.

2  Additionally, courts have rejected as evidence of discriminatory intent testimony almost identical
3  to that submitted by Moore, recognizing that statements about recruiting "younger talent" do not reflect
4  a discriminatory bias against older persons. *See EEOC v. Clay Printing Co.*, 955 F.2d 936, 942 (4th Cir.
5  1992) (statements that the employer needed to "attract newer, younger people" and "the company didn't
6  have young blood in the company"were not probative of age discrimination or a discriminatory
7  purpose).

8  Thus, Hamilton-Oar's comments relating to the age of various sales representative fail support
9  the claim that Avon's reasons for termination him are prextual. Therefore, summary judgment is granted
10 with respect to Moore's age discrimination claim.

## V.     FIFTH CAUSE OF ACTION FOR RACE DISCRIMINATION

12 As noted above, during his deposition, Moore could not identify a single action taken by
13 Hamilton-Oar or Avon before his termination that he thought was unfair or discriminatory, and he never
14 complained during his employment of being treated differently by Avon because of his sex, age, race,
15 or religion. *See, e.g.*, Moore Dep. at 36:9-25; 84:5-19; 91:11-92:7; 100:7-10; 223:11-14; 309:23-310:16;
16 310:24-311:17.

17 Moore claims that the following factors demonstrate race discrimination: (1) Moore did not fit
18 Hamilton-Oar's "image" because of his dark skin; (2) Hamilton-Oar allegedly referred to
19 African-Americans as "them" and "those people"; (3) Hamilton-Oar has not recently hired any
20 African-Americans; and (4) the Book of Mormon contains passages Moore interprets to be racist, and
21 since Hamilton-Oar is Mormon, she must also be racist.

22 Moore's argument that Moore did not fit Hamilton-Oar's "image" because of his dark skin is
23 totally unsupported by the evidence. The only witness to testify about "image" or the "right look" was
24 Judy Woods, a witness subpoenaed by Moore. Woods, a 47-year old, dark-skinned Hispanic Division
25 Manager, testified that, to the extent Hamilton made comments about employee appearances (i.e., their
26 "image"), the comments were limited to asking employees to "dress professionally." Woods Dep. at
27 50:8-51:8. When asked about the "right look," Woods testified that Hamilton told her that she had the
28 "right look" because Woods carried herself in a "professional manner," and that, like other Division

12

Managers, she "carried herself with a great deal of confidence." *Id.* at 52:2-12; 52:21-53:11.

With regard to the allegedly racist statements, Moore argues that Hamilton-Oar referred to African-Americans as "them" and "those people" on two occasions. Beard Decl. Ex. 18 (Peay Dep.) 21:7-8; 13:9-11. According to Laura Peay, a friend of Hamilton-Oar's, upon hearing the news that Peay's son was moving to Memphis, Tennessee, Hamilton-Oar stated, "that would be probably not a good place for him to be around all those people." Beard Decl. Ex. 18 (Peay Dep.) 13:9-11. Additionally, according to Peay, when an African American waiter forgot to bring Hamilton-Oar's drink, she said "that's pretty typical for them." *Id.* at 89:1-8.

As an initial matter, as already noted, ambiguous comments unrelated to Moore or his discharge do not establish discriminatory motive or pretext. *Nesbit*, 994F.2d at 705. The two purported comments – a reference to "those people" and a reference to "them" – are on their face ambiguous and do not refer to race. *See Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1289, 1293 (7th Cir. 1997) (decision maker's comment that plaintiff was one of "those kind of people" was not sufficient to support an inference of discriminatory intent). Indeed, Peay herself stated that she did not know whether Hamilton-Oar was using the terms to refer race, religion, or some other characteristic, and found the comments ambiguous herself. Peay Dep. at 12-16; 21-22. While such statements, if true, might constitute a *prima facie* showing of discriminatory intent, Avon has articulated a legitimate non-discriminatory explanation for firing Moore. Isolated references to "them" or "those people," made in contexts totally unrelated to Moore or his employment, are insufficient to demonstrate that Avon's explanation is pretextual.

With respect to Moore's claim that Hamilton-Oar has not recently hired any African-Americans, Moore offers absolutely no evidence that Hamilton-Oar refused to hire or promote qualified African-Americans, or that any African-Americans even *applied* for positions for which Hamilton-Oar was the hiring manager. Thus, this fact, if true, simply is not probative of discriminatory intent.

Finally, Moore's argument based on statements in the Book of Mormon is meritless. The gravaman of Moore's religious discrimination claim is as follows: 1) Hamilton-Oar is Mormon; 2) the Book of Morman contains statements that can be interpreted as demonstrating prejudice against people of color; 3) Moore is African-American; 4) therefore, Hamilton-Oar discriminated against Moore on the basis of his race. Opp'n at 6-7.

13

1  This offensive argument fails on so many levels it is difficult to know where to begin. First, the
2 syllogism fails on its face because the fact that the Book of Mormon may contain racist statements does
3 not demonstrate that Hamilton-Oar adhered to those statements, agreed with them, or was even aware
4 of them. Indeed, to the contrary, Hamilton testified that her belief is that her religion does *not*
5 discriminate against persons of color. Hamilton-Oar Dep. Vol. II at 91:6-92:1. Second, passages from
6 religious texts are not admissible "evidence" under Federal Rule of Evidence 404. *See Gov. of the Virgin*
7 *Islands v. Peterson*, 553 F.2d 324, 329 (3d Cir. 1977) (testimony regarding religious beliefs is not
8 admissible for the purpose of showing conformity therewith on a particular occasion). Third, as Moore's
9 opposition concedes, the allegedly offending statements regarding race existed in the pre-1978 version
10 of the Book of Mormon, and subsequent versions of the Book have excised those statements, and
11 therefore such statements are plainly irrelevant. Opp. at 7. Finally, it is near-axiomatic that not every
12 principle expressed in a particular religion's teachings can be imputed to adherents of that faith. If the
13 canonical literature of the world's religions was admissible to impugn particular adherents, virtually no
14 "believer" would escape allegations of prejudice. Indeed, Moore could just as easily argue that all
15 Christians are homophobic,[4] that all Muslims advocate the death of infidels,[5] or that all Jews oppose
16 interracial marriages.[6] Such religion-baiting is sophomoric and sophistical, and fails to rise to the level
17 of a colorable argument.[7]

18  Moore's desperate and disingenuous attempt to bolster his claims of racial bias fails to raise an
19 issue of material fact as to whether race was a motivating factor in Moore's termination, and therefore
20 summary judgement with respect to this claim is granted.

21 **VI.    SIXTH CAUSE OF ACTION FOR RELIGIOUS DISCRIMINATION**

---

[4] Leviticus 18:22 ("You shall not lie with a male as with a woman; that is an abomination.")

[5] Quran, Surrah 2:191 ("And slay them wherever ye find them . . . Such is the reward of disbelievers.")

[6] Deuteronomy 7:3 ("Neither shalt thou make marriages with them; thy daughter thou shalt not give unto his son, nor his daughter shalt thou take unto thy son.")

[7] Accordingly, Moore's Request for Judicial Notice of various passages from the Book of Mormon [Docket No. 89] is DENIED.

14

1 Moore's claim for religious discrimination merits little discussion. As far as the Court can
2 discern, the gravamen of this claim is that the same offensive statements in the Book of Mormon with
3 regard to race somehow translate into evidence that Moore was discriminated against because he is
4 Baptist. Opp'n at 21-22. The argument fails on its face because the fact that the Book of Mormon may
5 contain racist statements has absolutely no bearing on any discrimination on the basis of Moore's
6 *religion*. Moore proffers absolutely nothing to suggest Hamilton-Oar harbors ill-will towards Baptists
7 or that his religion was ever at it issue in relation to his employment at all. This claims fails.[8]

## VII. FOURTH CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

10 Moore's fourth cause of action for wrongful termination in violation in public policy is
11 predicated solely on Moore's claims of disability, sex, age, race and religious discrimination in violation
12 of FEHA. *See* FAC at ¶ 62. Because Moore's statutory discrimination claims fails, Moore's claim for
13 wrongful termination in violation of a public policy fails as a matter of law. *Green v. Ralee Eng'g Co.*,
14 19 Cal. 4th 66, 75-76 (1998) (to establish a wrongful termination in violation of public policy, plaintiff
15 must show that a recognized public policy has been violated); *Reno v. Baird*, 18 Cal. 4th 640, 664
16 (1998) (holding that it would be "absurd" to prohibit a lawsuit based on FEHA but allow the same suit
17 to proceed as a public policy claim).

## CONCLUSION

19 Simply put, Moore has failed to come forward with any evidence that Avon's stated reasons for
20 firing him are pretextual. Indeed, Moore's kitchen-sink approach to his discrimination claims only
21 serves to highlight the extent to which his claims are mutually inconsistent and unsupported by the facts.
22 Was he discriminated against because he was disabled? Because of his age? Because of his sex?
23 Because of his race? Or because of his religion? While Moore urges the Court to answer "all of the

---

[8] In any event, this claim is clearly time-barred. FEHA requires that an aggrieved employee file a complaint with the DFEH within one year of the alleged unlawful action. However, this period may be extended "for a period of time not to exceed 90 days following the expiration of that year" if the individual did not discover the employer's alleged unlawful practice until after the one-year period. Cal. Govt. Code §§ 12960, 12960(d)(1). The only fact Moore uses to support his claim is the fact that Hamilton is Mormon, and Moore admitted knowledge of that fact before his termination. Moore Dep. at 289:1-23. As Moore's claim for religious was filed more than one year after he was terminated, it is untimely.

15

above," on the basis of the evidence before the Court, it appears the correct answer is "none of the above." Therefore, Avon's Motion for Summary Judgment [Docket No. 55] is GRANTED.

IT IS SO ORDERED.

Dated: 10/4/07                                                   SAUNDRA BROWN ARMSTRONG
                                                                 United States District Judge